RAMSAY v. AMBERSON. (No. 8261.)

Court of Civil Appeals of Texas. San Antonio. Oct. 30, 1929.

R. D. Wright, of Laredo, for appellant.
Gordon Gibson, of Laredo, for appellee.

SMITH, J. In November, 1926, Joe Amberson, owner and operator of a line of motor busses, agreed to purchase a certain automobile from L. W. Beckham, a dealer at Laredo, for a consideration including a series of 12 promissory notes of $100 each, payable monthly. The car was in Beckham's warehouse at the time the deal was made, and Amberson's notes were placed in a "pigeonhole" in Beckham's office, it being agreed that the latter would get the car out of the warehouse and deliver it to Amberson during the day. There was some difficulty or delay in delivering the car, however, and upon failure to produce it the next day Beckham told Amberson he would get the notes from a bank, where he had left them with one Ben Alexander, and destroy them. Amberson assumed this was true, and paid no further attention to the matter at the time, as the car was never delivered to him. It appears, however, that Beckham, instead of destroying the notes, sold indorsed and delivered them to F. M. Ramsay, an innocent purchaser. When the first of the series of notes matured, Ram-

say, the holder, mailed written notice thereof to Amberson, the maker, who returned it to Ramsay with a notation that he "did not know anything about it, and to see Mr. Beckham." He received no more notices concerning this or subsequently maturing notes, the first four of which were paid to Ramsay by Beckham, the indorser, with whom Ramsay had frequent transactions of a like nature. It appears that Beckham did a very substantial business over a period of years, and that during that period Ramsay purchased a large part of his paper, including many similar notes against Amberson. The latter always paid these notes to Ramsey, promptly when due, except the notes in controversy, and during the very month he repudiated the notes in controversy he paid several other notes of like nature to Ramsay.

In January, 1927, Amberson purchased three more cars from Beckham, at the agreed price of $6,000. Ramsay was present when Beckham and Amberson closed this deal, and while the negotiations relating to the terms of payment were in process. At that time one of the three cars had already been delivered to Amberson, but no part of the $2,000 consideration therefor had been paid by him to Beckham. In this conference, Amberson asked Ramsay as to the status of the 12 notes now in controversy, whereupon Ramsay assured him, in effect, that they had been paid by Beckham. Relying upon this assurance, Amberson proceeded to pay Beckham the full consideration for the three cars mentioned. Ramsay continued to look to Beckham for payment of the notes in controversy, and to acquiesce in Amberson's prior repudiation of them. In fact, Beckham paid Ramsey the third and fourth of those notes, having previously paid the first 2 of them to him, following Amberson's repudiation. This left the remaining 8 of said notes unpaid, and, when Beckham failed in business shortly afterwards, Ramsay brought this action against Amberson to recover upon the remaining eight notes. In his answer Amberson set up several defense, among them estoppel, and, upon a favorable jury finding upon that issue, judgment was rendered denying any recovery to Ramsay, who has appealed.

It is claimed by appellant that the evidence was insufficient to raise the issue of estoppel, or support the jury's affirmative finding thereon. We overrule this contention.

Appellee's evidence, credited by the jury, shows that appellee had repudiated the notes. Appellant had apparently acquiesced in this repudiation. He was looking to Beckham for their payment, had collected from the latter the first two of the notes at their maturity. He participated in the conference in which appellee purchased three more cars from Beckham, at the price of $6,000; he knew that appellee owed Beckham $2,000 for a car already delivered, and was about to pay the latter that amount, plus $4,000 additional for two other cars, still to be delivered. He knew that in this situation appellee was in a position to force Beckham to adjust their account and protect appellee against any possible liability on the notes fraudulently obtained from him by Beckham and held by appellant. In this situation, appellee called upon appellant to declare his attitude, to say then and there whether he looked to Beckham or to appellee for payment of those notes, whereupon appellee assured him that Beckham had already paid the notes, that he would look to Beckham, and not to appellee, for such payment. The three parties had dealt together constantly, and with entire satisfaction, for 18 months or more, appellee relied fully upon appellant's assurance, and then and there, with appellant's full knowledge and acquiescence, proceeded to a full settlement with Beckham, thereby yielding up all his present power to force Beckham to charge off the amount of the notes in controversy. The parties then for some months continuously dealt together upon the basis thus established; appellant continued to collect from Beckham upon the notes as they matured; and appellee continued in the position of security into which appellant's declarations had placed him. After Beckham had paid the fourth note to appellant, and before the fifth was due, Beckham became insolvent, whereupon appellant turned upon appellee and brought this action against him to recover upon the remaining unpaid notes. We conclude that under this state of facts the jury correctly found appellant to be estopped from asserting his claim upon appellee.

The judgment is affirmed.